1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

9
10
11
12
13
14
15

| | |
|---|---|
| PATTI BUTLER, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>)<br>) |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social<br>Security, | )<br>)<br>)<br>) |
| Defendant. | )<br>)<br>) |

No. 1:14-CV-3121-LRS

**ORDER GRANTING
PLAINTIFF'S MOTION FOR
JUDGMENT,** *INTER ALIA*

16
17

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment
(ECF No. 13) and the Defendant's Motion For Summary Judgment (ECF No. 17).

18
19

**JURISDICTION**

20
21
22
23
24
25
26
27

Patti Butler, Plaintiff, applied for Title II Disability Insurance benefits (DIB)
and Title XVI Supplemental Security Income benefits (SSI) on July 29, 2010. The
applications were denied initially and on reconsideration. Plaintiff timely requested
a hearing and a video hearing was held on September 6, 2012, with Administrative
Law Judge (ALJ) Gene Duncan sitting in Spokane, while Plaintiff, represented by an
attorney, testified from Yakima. Robert Sklaroff, M.D., testified telephonically as
a Medical Expert (ME). On December 18, 2012, the ALJ issued a decision finding
the Plaintiff not disabled. The Appeals Council denied a request for review and the

28

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 1**

1  ALJ's decision became the final decision of the Commissioner.  This decision is

2  appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

3

4                          **STATEMENT OF FACTS**

5       The facts have been presented in the administrative transcript, the ALJ's

6  decision, the Plaintiff's and Defendant's briefs, and will only be summarized here.  At

7  the time of the administrative hearing, Plaintiff was 44 years old.  She has a high

8  school education and no past relevant work experience.  Plaintiff alleges disability

9  since June 1, 2010.

10

11                          **STANDARD OF REVIEW**

12      "The [Commissioner's] determination that a claimant is not disabled will be

13 upheld if the findings of fact are supported by substantial evidence...." *Delgado v.*

14 *Heckler*, 722 F.2d 570, 572 (9th Cir. 1983).  Substantial evidence is more than a mere

15 scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less

16 than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);

17 *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir.

18 1988).  "It means such relevant evidence as a reasonable mind might accept as

19 adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91

20 S.Ct. 1420 (1971).  "[S]uch inferences and conclusions as the [Commissioner] may

21 reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457

22 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).

23 On review, the court considers the record as a whole, not just the evidence supporting

24 the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir.

25 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

26      It is the role of the trier of fact, not this court to resolve conflicts in evidence.

27 *Richardson*, 402 U.S. at 400.   If evidence supports more than one rational

28

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ  erred in:  1) not finding the Plaintiff's mental impairments to be "severe;" 2) failing to take all of Plaintiff's non-exertional limitations into account in his residual functional capacity (RFC) determination; 3) discounting the Plaintiff's credibility; 4) finding the Plaintiff had past relevant work as a cashier;  and 5) denying Plaintiff's counsel the opportunity to question Plaintiff at the administrative hearing and then denying Plaintiff's claim without a supplemental hearing and without allowing Plaintiff an opportunity to testify at the same.

## DISCUSSION

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I) and 416.920(a)(4)(I). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

1  other substantial gainful activity and (2) that a "significant number of jobs exist in the
2  national economy" which claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496,
3  1498 (9th Cir. 1984).
4
5  **ALJ'S FINDINGS**
6      The ALJ found the following: 1) Plaintiff's fibromyalgia constitutes a "severe"
7  impairment, but her mental impairments "do not cause more than minimal limitation
8  in [her] ability to perform basic work mental work activities" and therefore, are not
9  "severe;" 2) Plaintiff does not have an impairment or combination of impairments that
10 meets or equals any of the impairments listed in  20 C.F.R. § 404 Subpart P, App. 1;
11 3) Plaintiff has the residual functional capacity (RFC) to perform the full range of
12 light work as defined in 20 C.F.R. §404.1567(b) and §416.967(b) (lifting no more
13 than 20 pounds at a time with frequent lifting or carrying of objects weighing up to
14 10 pounds; requires a good deal of walking or standing, or involves sitting most of
15 the time with some pushing and pulling of arm or leg controls); and 4)  Plaintiff's
16 RFC allows her to perform past relevant work as a cashier and alternatively, Medical-
17 Vocational Rule 202.21, 20 C.F.R. Part 404, Subpart P, Appendix 2, would direct a
18 finding of "not disabled."   Accordingly, the ALJ concluded the Plaintiff is not
19 disabled.
20
21 **"SEVERE" MENTAL IMPAIRMENTS**
22      A "severe" impairment is one which significantly limits physical or mental
23 ability to do basic work-related activities.  20 C.F.R. §§ 404.1520(c) and
24 416.920(c).   It must result from anatomical, physiological, or psychological
25 abnormalities which can be shown by medically acceptable clinical and laboratory
26 diagnostic techniques.  It must be established by medical evidence consisting of
27 signs, symptoms, and laboratory findings, not just the claimant's statement of
28
**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

symptoms.  20 C.F.R. §§ 404.1508 and 416.908.   An ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005), citing S.S.R. No. 85-28 (1985).

Step two is a *de minimis* inquiry designed to weed out nonmeritorious claims at an early stage in the sequential evaluation process. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), citing *Bowen*, 482 U.S. at 153-54 ("[S]tep two inquiry is a *de minimis* screening device to dispose of groundless claims").  "[O]nly those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits" at step two. *Bowen*, 482 U.S. at 158 (concurring opinion).  "Basic work activities" are the abilities and aptitudes to do most jobs, including:  1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; 2) capacities for seeing, hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgment; 5) responding appropriately to supervision, co-workers and usual work situations; and 6) dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b) and 416.921(b).

Plaintiff was seen by Roland Dougherty, Ph.D., for a consultative psychological evaluation on October 27, 2010. Dr. Dougherty diagnosed the Plaintiff on Axis I with "ADHD [Attention Deficit Hyperactivity Disorder]," "PTSD [Post-Traumatic Stress Disorder] in partial remission," "Depressive Disorder, NOS (not otherwise specified), moderate," and "Anxiety disorder, NOS, with infrequent panic attacks."   He diagnosed her on Axis II with "Personality Disorder, NOS, with borderline personality traits and dependent personality features."  He assigned her a GAF (Global Assessment of Functioning) score of 55.  (Tr. at p. 425). A GAF score between 51 and 60 indicates "moderate symptoms" or "moderate" difficulty in social, occupational, or school functioning.  *American Psychiatric Ass'n, Diagnostic &*

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

1  *Statistical Manual of Mental Disorders*, (4th ed. Text Revision 2000)(DSM-IV-TR at

2  p. 34).  According to Dr. Dougherty:

> I have made the above diagnoses based on her report but I
> cannot be sure that she has been entirely accurate in her
> reports given the past evaluation findings and reports.
> She appears to function fairly well at home and is employed
> part-time taking care of a developmentally delayed client.
> She reports doing well at this work.  She has had multiple
> marriages and a work history marked by holding many jobs
> for a few months.

(Tr. at p. 426).  He added that:

> Her prognosis appears to be guarded and dependent upon
> her use of appropriate mental health and medication
> services.  Motivational factors may be important in her
> case.

> Mrs. Butler was pleasant and cooperative with me.  Her
> thinking was rational and goal-directed though her
> responses often tangential.  Her social skills appear to
> be good.  She reports being able to function effectively
> as a care-provider, helping to manage her client's
> money and helping with his daily activities.  She reports
> being able to concentrate well when not distracted.  She
> should be able to understand, remember and follow both
> simple and complex directions.  She reported having done
> well in college classes in the past.

(Tr. at pp. 426-27).

The ALJ gave "great weight" to Dr. Dougherty's assessment "because it is

supported by his findings and generally consistent with the overall record."  (Tr. at

p. 24).  According to the ALJ, " [t]he claimant's examination results and reported

activities of daily living, including her volunteer work in the community, indicate no

more than mild limitations."  (*Id*.).  The latter statement presumably was a reference

to the "Functional Information" that Plaintiff reported to Dr. Dougherty.  (Tr. at pp.

424-25).

Interestingly, although the ALJ thought Dr. Dougherty's examination results

"indicated no more than mild limitations," the GAF score he assigned to Plaintiff

///

///

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 7**

indicated "moderate" limitations.[1]  And notwithstanding his statements that Plaintiff's "thinking was rational and goal-directed," that [h]er social skills appear to be good," that "[s]he should be able to understand, remember and follow both simple and complex directions," he also stressed that her prognosis was "guarded and dependent upon her use of appropriate mental health and medication services."  Dr. Dougherty's assessment was the only mental health provider assessment to which the ALJ gave any significant weight.  His assessment, however, cannot be viewed in isolation and is colored by the subsequent assessments of the other treating, examining and non-examining mental health professionals, all of which the ALJ gave "little weight."

In November 2010, a state agency consultant psychologist, Mary Gentile, Ph.D., completed a "Findings Of Fact And Analysis Of Evidence."  Based on her review of the record, including Dr. Dougherty's assessment, Dr. Gentile concluded that Plaintiff had a severe medically determinable organic brain syndrome, anxiety disorder, affective disorder, and personality disorder.  (Tr. at pp. 94-95).  "Severity" is measured according to the functional limitations imposed by the medically determinable impairments., and functional limitations are assessed using the four criteria in paragraph B of the listings.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 12.00(C.).  While Dr. Gentile concluded the restriction on Plaintiff's daily living activities was "mild," and there were no repeated episodes of decompensation of extended duration, she also concluded that Plaintiff had "moderate" difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. (Tr. at p. 95).  In April 2011, Sean Mee, Ph.D., another state agency consultant,

---

[1] A GAF score between 61and 70 indicates "mild symptoms" or "some" difficulty in social, occupational, or school functioning.  *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision 2000)(DSM-IV-TR at p. 34).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

conducted a record review and reiterated everything Dr. Gentile concluded in November 2010 regarding the severity of Plaintiff's mental impairments and the functional limitations arising therefrom. (Tr. at pp. 126-27; 130-32).

Plaintiff saw Mark Deramo, M.D., on January 11, 2011 complaining about depression. Plaintiff noted she was on Effexor, an antidepressant medication. Dr. Deramo indicated he intended to increase the Effexor and he referred Plaintiff to Kirk Strosahl, Ph.D., for "psychologic disability" and "behavioral therapies." (Tr. at p. 484). Plaintiff saw Dr. Strosahl on January 11, 2011. He advised Dr. Deramo that "this patient is probably suffering from primary posttraumatic stress disorder and this is producing her mixed anxiety and depression symptoms." (Tr. at p. 485). Plaintiff saw Dr. Deramo again on January 24, 2011, who noted that Plaintiff had "significant psychologic/psychiatric symptoms" and that he would continue the Plaintiff on "current medications for depression/anxiety." (Tr. at p. 483). Plaintiff also saw Dr. Strosahl on January 24, 2011. This time, Dr. Strosahl advised Dr. Deramo that "this patient seems to be responding very positively to the combination of increased antidepressant medication and working on some acceptance and mindfulness principals (sic)." He added that it was important "to continue encouraging [Plaintiff] to work on allowing her emotions, memories and thoughts to simply be present without struggling to evaluate them or to change them in any way," and that "she needs to integrate her history in a way that it does not cause her to ruminate and think about what has already happened in her life for excessive periods of time." (Tr. at p. 482).

Apparently, it was not until December 16, 2011, that Plaintiff saw Dr. Deramo again. Plaintiff noted continuing problems with depression/anxiety and that she had been off her medications for "quite some time" due to lack of insurance. (Tr. at p. 585). Dr. Deramo discussed with Plaintiff "behavioral strategies to help with depression/anxiety and also supplemental medication." He also noted that he would

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

1   restart the Plaintiff on Effexor and that she would follow-up with Dr. Strosahl.  (*Id*.)

2   Plaintiff saw Dr. Strosahl too on December 16.  He informed Dr. Deramo as follows:

3           This patient is struggling with chronic depression which is
        being produced by her incessant rumination over her life story.
4       As she goes through the story today, it is very confusing and a
        patchwork quilt of contradictory themes and premises.  I pointed
5       out to her that her story is simply that; it is not Truth.  I encouraged
        her to begin to step back when she notices that she is engaging in
6       this rumination and to try to get into the present moment.  This
        type of mindfulness intervention has been shown to work with
7       depressive rumination in clinical studies.  Please reinforce this
        important principle, when you have medical contact with her.

8   (Tr. at p. 586).

9        The ALJ's reasons for giving little weight to Dr. Strosahl's opinion are neither

10  "clear and convincing," or "specific and legitimate."[2]   It is apparent that Dr.

11  Strosahl's comment that Plaintiff's story was not the "truth," was not intended as a

12  comment on her credibility, but rather as an observation regarding her "depressive

13  rumination" and how it adversely impacted her mental health.  Furthermore, the

14  record reasonably suggests that Plaintiff did not follow up with Dr. Strosahl between

15  January and December 2011, not necessarily because her condition had improved, but

16  rather because she lacked health insurance.  It is apparent from the comments of Drs.

17  Deramo and Strosahl in December 2011, that Plaintiff continued to struggle with

18  depression requiring medical treatment and behavioral therapy.

19       In October 2012, Plaintiff saw CeCilia Cooper, Ph.D., for a consultative

20  psychological evaluation.  She diagnosed Plaintiff with "Bipolar II Disorder, Atypical

21  Features," "Anxiety Disorder NOS with occasional panic attacks," and "Borderline

22

23  ───────────────────

24       [2]  If a treating or examining physician's or psychologist's opinion is not

25  contradicted, it can be rejected only for clear and convincing reasons.  If

26  contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are

27  supported by substantial evidence are given.  *Lester v. Chater*, 81 F.3d 821, 830

28  (9th Cir. 1995).

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 10**

Personality Disorder (some avoidant, dependent, oppositional traits." (Tr. at p. 632). She assigned the Plaintiff a GAF score of 63, but qualified this by indicating it depended on the Plaintiff being in a "supportive environment," as discussed below. (*Id*.). As noted at footnote 2, *supra*, a GAF score between 61-70 indicates "mild symptoms," or "some difficulty in social, occupational or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." -Dr. Cooper, like Dr. Dougherty, considered Plaintiff's prognosis to be "guarded." (Tr. at p. 632).  Although Dr. Cooper thought the Plaintiff was "inclined to magnify symptoms," she did not think the Plaintiff was malingering.  (*Id*.).  Dr. Cooper thought Plaintiff "would have some problems with change and with maintaining attention and concentration for extended periods of time because of anxiety and depression" and that "[t]hose problems would be more evident in busy settings in which she has to frequently interact with the general public and to multi-task." (*Id*.). Dr. Cooper thought Plaintiff "would not require close supervision if she has a comfortable routine to follow in a setting she enjoys." (*Id*.).  Dr. Cooper added that:

> Ms. Butler would have some problems with supervisors because of her personality traits.  She would not have significant problems with coworkers provided that she and they could complete work independently of one another. She would not do well on a close knit team.

> Ms. Butler would do best in settings in which she is given some say in determining how best to complete her assigned tasks within the time period designated.  She would benefit from concrete feedback about specific things she does well. She would benefit from reassurance that mistakes are not indications of personal failure.  Specific suggestions for performance improvement supported by recognition of improvement would be helpful.

(Tr. at p. 633).

The ALJ gave "little weight" to Dr. Cooper's opinions because they were "based upon the claimant's subjective complaints, and the claimant is not fully credible."  It is apparent, however, that Dr. Cooper's opinions are not significantly different from those of Dr. Dougherty to which the ALJ assigned "great weight."  Dr.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

Dougherty assigned the Plaintiff a GAF score of 55, lower than the GAF score of 63 assigned by Dr. Cooper, although as noted, Dr. Cooper stressed that a "supportive environment" was necessary for Plaintiff to function at a level 63.

In giving "great weight" to Dr. Dougherty's opinions, and little weight to the opinions of Drs. Strosahl and Cooper, the ALJ focused on what the Plaintiff reported to those doctors regarding her activities of daily living and her part-time "employment" taking care of a developmentally delayed person. (Tr. at pp. 23-25). It is clear, however, that notwithstanding those activities, each of these mental health providers  was of the opinion that Plaintiff had some moderate difficulties.

In *Webb*, the ALJ found the claimant's "subjective complaints" and "assertions regarding the disabling extent of his functional limitations . . . [we]re exaggerated and not credible because he was capable of performing household tasks and had sought employment during the relevant period."  433 F.3d at 687-88.  The Ninth Circuit found those were not "clear and convincing" reasons for rejecting the claimant's subjective complaints and assertions[3]:

> That Webb sought employment suggests no more than that he was doing his utmost, in spite of his health, to support himself. "The mere fact that a plaintiff has carried on certain daily activities such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (internal citation omitted).

*Id*. at 688.

In *Webb*, the Ninth Circuit pointed out that the ALJ viewed Webb's objective

---

[3] "Unless there is affirmative evidence to show that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

medical evidence simply as part of his subjective complaints in finding his assertions to be "exaggerated, and not credible." 433 F.3d at 688. The same is true in the case at bar. In *Webb*, the circuit agreed that "[c]redibility determinations do bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and his diagnosed conditions," but found there was "no inconsistency between Webb's complaints and his doctor's diagnoses sufficient to doom his claim as groundless under the de minimis standard of step two," and "Webb's clinical records did not merely record the complaints he made to his physicians, nor did his physicians dismiss Webb's complaints as altogether unfounded." *Id*. In the case at bar, it is not apparent there are any conflicting opinions about Plaintiff's mental condition and the resulting functional limitations, nor is there inconsistency between the Plaintiff's subjective complaints and her diagnosed conditions sufficient to conclude her disability claim is groundless under the step two standard. Plaintiff's mental health records do not merely record her complaints, and none of her mental health providers dismissed her complaints as unfounded. In concluding that Plaintiff did not have a severe mental impairment, the ALJ relied on his own interpretation of the medical evidence, and in doing so, rejected even the interpretations and conclusions of the state agency medical consultants (Drs. Gentile and Mee).

Here, there is not a total absence of objective evidence of "severe" mental impairment. See *Ukolov v. Barnhart*, 420 F.3d 1002 [, 1006] (9th Cir. 2005)(affirming a finding of no disability at step two when even the claimant's doctor was hesitant to conclude that any of the claimant's symptoms and complaints were medically legitimate). Accordingly, there is not substantial evidence supporting the ALJ's determination that Plaintiff does not suffer from any "severe" mental health impairments.

///

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

**PHYSICAL RFC/CREDIBILITY**

The ALJ concluded that "[i]n terms of the claimant's physical limitations, the overall record indicates that she retains sufficient strength, range of motion, and pain tolerance for the full range of light work." (Tr. at p. 26).

Marie Ho, M.D., examined the Plaintiff on November 21, 2010.  In the "History Of Present Illness" section of her report, Dr. Ho wrote that Plaintiff has 12 of the standard 18 tender points of fibromyalgia on distraction with one control point." (Tr. at p. 428).  It is not clear whether Dr. Ho herself did the tender points testing, or whether it had been done previously by a different examiner. Nevertheless, Dr. Ho diagnosed the Plaintiff with fibromyalgia "with 12 of the standard 18 tender points of fibromyalgia and associated disorders, including migraine headaches." (Tr. at p. 432).  And her diagnosis, along with the diagnosis of Wing C. Chau, M.D., and the hearing testimony of the medical expert, led the ALJ to conclude that fibromyalgia was a "severe" impairment for the Plaintiff which causes her significant limitations.  Nonetheless, the ALJ was unwilling to accept the non-exertional limitations and all of the exertional limitations opined by Drs. Ho and Chau as stemming from Plaintiff's fibromyalgia.

According to Dr. Ho:

> [Plaintiff] is limited to standing and walking a total time of at least two hours, but less than six hours in an eight [hour] workday, due to fibromyalgia.
>
> [Plaintiff] is limited to sitting at least two hours, but less than six hours at one time in an eight-hour workday.
>
> [Plaintiff] would be capable of sitting six hours in an eight-hour workday.
>
> . . . .
>
> Restrictions of postural activities include kneeling, crouching, and stooping occasionally, due to limitations of fibromyalgia.

(Tr. at p. 433).

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 14**

1  The ALJ gave "some weight" to Dr. Ho's opinion "because it is based in part

2  on Dr. Ho's objective findings, which suggest a full range of light work," but found

3  "the limitation on standing and walking along with the postural limitations are based

4  upon the claimant's subjective complaints, and the claimant is not fully credible."

5  (Tr. at pp. 27-28).

6  The ALJ treated Dr. Chau's opinion in a similar fashion.  Dr. Chau examined

7  the Plaintiff on November 7, 2012.  He too diagnosed the Plaintiff with fibromyalgia,

8  even though his "impression" was as follows:

9  
10  
11  
12  

> [Plaintiff] has been diagnosed for fibromyalgia in the past,
> though her exam was not typical for such a patient (lack of
> tender points).  Patient did show[] some malingering
> behaviors during the evaluation.  From a musculoskeletal
> point of view, she is without focal neurological deficit.
> Patient should be capable of working full time.  Patient has
> good strength and there should not be any lifting/carrying
> restrictions . . . .

13  
14  (Tr. at p. 637).  In an accompanying "Medical Source Statement Of Ability To Do

15  Work-Related Activities," Dr. Chau indicated Plaintiff could sit, stand, and walk for

16  one hour without interruption; could sit for a total of three hours in an eight hour

17  workday, stand for a total of three hours in an eight hour workday, and walk for a

18  total of two hours in an eight hour workday; that she was limited to occasional

19  reaching overhead with both her left and right hands; that she could occasionally

20  climb stairs and ramps, climb ladders and scaffolds, balance, stoop and kneel; and

21  that she could never crouch or crawl.  (Tr. at pp. 639-41).[4]  The ALJ found the non-

22  exertional limitations opined by Dr. Chau were not supported by his examination and

23  "appears" to have been based on the Plaintiff's "subjective reports."  (Tr. at p. 28).

24  
25  ⁴ In his decision, the ALJ says Dr.Chau opined that Plaintiff was restricted

26  regarding use of foot controls and exposure to humidity and noise, but it is not

27  apparent that Dr. Chau opined any such restrictions in his "Medical Source

28  Statement Of Ability To Do Work-Related Activities."

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 15**

1    In *Benecke v. Barnhart*, 379 F.3d 587, 589-90 (9th Cir. 2004), the Ninth Circuit

2    described fibromyalgia as follows:

> Benecke suffers from fibromyalgia, previously called fibrositis, a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Common symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease. Fibromyalgia's cause is unknown, there is no cure, and it is poorly understood within much of the medical community. **The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms.** The American College of Rheumatology issued a set of agreed-upon diagnostic criteria in 1990, but to date there are no laboratory tests to confirm the diagnosis.

(Emphasis added). It is no surprise then that the ALJ found the non-exertional limitations opined by Dr. Chau were not supported by his examination. And it is true that Dr. Ho's "limitation on standing and walking along with the postural limitations are based upon the claimant's subjective complaints." "A patient's report of complaints, or history, is an essential diagnostic tool" in fibromyalgia cases, and a physician's reliance on such complaints "hardly undermines his opinion as to functional limitations." *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2nd Cir. 2003). The lack of objective findings is insufficient to support the ALJ's rejection of the exertional and non-exertional limitations opined by Drs. Ho and Chau. It is not a "clear and convincing" or a "specific and legitimate" reason to discount the opinions of these doctors.

Clearly, Dr. Ho and Dr. Chau believed plaintiffs' reports of pain and other symptoms to the extent that they were willing to opine the exertional and non-exertional limitations they opined. It is noted that they were fairly consistent regarding those limitations and Dr. Chau, like Dr. Ho, opined limitations regarding sitting, standing and walking that do not comport with capacity to perform a full range of light work which requires "a good deal of walking or standing, or involves

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 16**

sitting most of the time with some pushing and pulling of arm or leg controls."[5]

Drs. Ho was not duped regarding Plaintiff's daily living activities. In her report, Dr. Ho noted:

> The claimant has mainly worked in sheltered types of jobs. She is still working for the State of Washington. She works about 40 hours per month and earns about $400.00 per month. She is only working part-time.
>
> The claimant is able to drive locally. She shops with her husband. She is able to do her own personal care, but she has problems with fine motor skills, as she has had poor coordination for the past 10 years. She does some light cooking and light housework. She is no longer able to do her hobbies.
>
> On average day (sic) she does her activities of daily living.

(Tr. at p. 429).

Bolstering the integrity of Dr. Chau's report is the fact that notwithstanding the limitations opined by him, he also opined that Plaintiff "should be capable of working full time . . . has good strength and there should not be any lifting/carrying restrictions." (Tr. at p. 637). Furthermore, as noted above, Dr. Chau rendered the opinions he did regarding Plaintiff's limitations, even though he pointed out that Plaintiff "did show[] some malingering behaviors during the evaluation."

In his decision, the ALJ found that Plaintiff "reported several activities of daily living and volunteer work that is inconsistent with her alleged pain and inability to

---

[5] Non-examining state agency consultant, Charles Wolfe, M.D., also indicated, based on his review of the record, that Plaintiff had certain postural limitations which were inconsistent with an ability to perform the full range of light work. (Tr. at pp. 143-45).

Although Dr. Deramo indicated in January 2011 that he did "not find anything that I believe is physically limiting in terms of the work that [Plaintiff] is able to do" (Tr. at p. 483), there is no indication that he was aware of Dr. Ho's previous diagnosis of fibromyalgia.

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 17**

work" including dancing at a bar with her husband every six weeks, helping her eight-year-old step-son get ready for school, cooking, vacuuming, washing laundry, grocery shopping, reading up to two hours at a time, taking care of the family goat, attending her step-son's school functions, helping her step-son with homework, volunteering for 4H, and calling Bingo three times a week at a local senior center. (Tr. at p. 27).

"The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Rather, "[i]t is only where the level of activity is inconsistent with a claimed limitation that the activity has any bearing on credibility." *Id*. Daily activities therefore "may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of h[er] day engaged in pursuits involving physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d  625, 639 (9th Cir. 2007). To conclude that a claimant's daily activities warrant an adverse credibility determination, the ALJ must make specific findings relating to the daily activities and the transferability of the activities to the workplace. *Id*.

Here, the ALJ did not make specific findings how Plaintiff's daily activities manifested her ability to perform the full range of light work in the work place (a good deal of walking or standing, or involves sitting most of the time with some pushing and pulling of arm or leg controls). Accordingly, Plaintiff's daily activities do not constitute a "clear and convincing" reason for discounting her credibility

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 18**

regarding her physical exertional and non-exertional capacity.  An ALJ can only reject a plaintiff's statement about limitations based upon a finding of "affirmative evidence" of malingering or "expressing clear and convincing reasons" for doing so. *Smolen,* 80 F.3d at 1283-84.[6]

Nor is Plaintiff's reporting of lower leg, left ankle pain at a level of 5 out of 10 in September 2010 (Tr. at p, 389), and right shoulder pain at a level of 4 out of 10 in January 2012, after a minor vehicle accident (Tr. at p. 566), a "clear and convincing" reason for discounting her credibility regarding her physical RFC.  This is particularly so because of the limitations opined by Drs. Ho and Chau.  Furthermore, the limitations opined by Drs. Ho and Chau are contrary to the assertion of the ALJ that Plaintiff's pain is "controlled with medication when needed."  It was inconsequential to Dr. Ho that Plaintiff reported she was only taking over-the-counter medication to help with pain (Tylenol Arthritis).  (Tr. at p. 429).  It was inconsequential to Dr. Chau that Plaintiff reported the only thing she was taking was Vitamin B.  (Tr. at p. 635). There is no evidence in the record that prescription medication, as opposed to over-the-counter pain medication, would have more effectively controlled Plaintiff's fibromyalgia symptoms.

///

///

///

---

[6]  In his written decision, the ALJ did not find there was "affirmative evidence" of malingering.  Indeed, he gave no weight to the opinion of Jay Toews, Ph.D., a psychologist who in February 2010, diagnosed Plaintiff on Axis I with "Malingering, probable."  (Tr. at p. 360).  The ALJ gave the opinion no weight because the diagnosis was made prior to Plaintiff's alleged disability onset date. (Tr. at p. 25).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 19**

**REMAND**

Social Security cases are subject to the ordinary remand rule which is that when "the record before the agency does not support the agency action, . . . the agency has not considered all the relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Commissioner of Social Security Administration*, 775 F.3d 1090, 1099 (9th Cir. 2014), quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598 (1985).

In "rare circumstances," the court may reverse and remand for an immediate award of benefits instead of for additional proceedings. *Id*., citing 42 U.S.C. §405(g). Three elements must be satisfied in order to justify such a remand. The first element is whether the "ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Id*. at 1100, quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). If the ALJ has so erred, the second element is whether there are "outstanding issues that must be resolved before a determination of disability can be made," and whether further administrative proceedings would be useful. *Id*. at 1101, quoting *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id*. Finally, if it is concluded that no outstanding issues remain and further proceedings would not be useful, the court may find the relevant testimony credible as a matter of law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of [the] proceedings." *Id*., quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969). Where all three elements are satisfied-ALJ has failed to provide legally sufficient reasons for rejecting evidence, there are no outstanding issues that must be resolved, and there is no question the claimant is

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 20**

disabled- the court has discretion to depart from the ordinary remand rule and remand for an immediate award of benefits. *Id*. But even when those "rare circumstances" exist, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Id*. at 1102, quoting *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).

Here, there are "outstanding issues that must be resolved before a determination of disability can be made," and further administrative proceedings would be useful. Not all essential factual issues have been resolved. Although the ALJ erred in finding that Plaintiff does not have "severe" mental impairments, there must still be a determination as to Plaintiff's mental RFC. In making the mental RFC determination, the ALJ will have to accept as true that Plaintiff's mental impairments significantly limit her ability to perform basic work-related activities at least to the extent indicated by the mental health professionals who have examined her (Drs. Strosahl, Cooper and Dougherty). Plaintiff's mental RFC, along with her physical RFC for less than the full range of light work as opined by Drs. Ho and Chau, will have to be presented to a vocational expert who will testify whether Plaintiff's combined mental and physical RFC allows her to perform jobs existing in significant numbers in the national economy.[7] *Tackett v. Apfel*, 180 F.3d 1094, 1103-04 (9th Cir. 1999). Because it is assumed the Plaintiff will testify during the additional proceedings, and that her counsel will have an opportunity to ask her questions, the court deems moot Plaintiff's assertion that the ALJ errd in not convening a supplemental hearing before he rendered his decision. And during the additional proceedings, Plaintiff has can request the ALJ include her 2004 file in the record.

---

[7] The Commissioner concedes that Plaintiff has no past relevant work and that the ALJ erred in finding otherwise at Step Four. (ECF No. 17 at pp. 25-26).

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 21**

**CONCLUSION**

Plaintiff's Motion For Summary Judgment (ECF No. 13) is **GRANTED** and Defendant's Motion For Summary Judgment (ECF No. 17) is **DENIED**. The Commissioner's decision is **REVERSED** and pursuant to sentence four of 42 U.S.C. §405(g) and § 1383(c)(3), this matter is **REMANDED** to the Commissioner for additional proceedings and/or findings consistent with this order. An application for attorney fees may be filed by separate motion.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this ___22nd___ day of May, 2015.


*s/Lonny R. Suko*

_____
LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 22**